UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEANETTE LIPINSKI, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-2596 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| ALONSO CASTANEDA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# ORDER

Plaintiff Jeanette Lipinski filed an application for leave to proceed *in forma pauperis* (Dckt. No. [3]) and a motion for attorney representation (Dckt. No. [4]). The Court grants Lipinski's request to proceed *in forma pauperis* but denies her motion for the appointment of an attorney. The Court has reviewed the complaint (Dckt. No. [1]) as part of prescreening as required by 28 U.S.C. § 1915A. The complaint can proceed against Officers Tim Bolin and Joshua McAllister. Lipinski appears to state claims against Officers Bolin and McAllister under 42 U.S.C. § 1983 for false arrest and excessive force. However, the complaint's allegations are insufficient to state a claim against Officer Jesus Avila and Alonso Castaneda (her neighbor). The claims against Officer Avila and Castaneda are dismissed without prejudice. If Plaintiff believes that she could state a claim through an amended complaint, the Court grants her leave to file an amended complaint by November 4, 2022. Plaintiff may proceed on her complaint (Dckt. No. [1]) consistent with this Order. The Clerk of Court is directed to: (1) file Plaintiff's complaint (Dckt. No. [1]); and (2) issue summons for service of the complaint on Defendants Tim Bolin and Joshua McAllister. The Court appoints the U.S. Marshal to serve Defendants Bolin and McAllister using the USM-285 forms that Plaintiff has filed on the docket (Dckt. No. [7]).

# STATEMENT

Because Lipinski has filed an application to proceed *in forma pauperis*, the Court must prescreen the complaint. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court must dismiss a complaint that "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." *Id.* When reviewing an *in forma pauperis* application for failure to state a claim, the Court applies "the same standards that apply to Rule 12(b)(6) [of the Federal Rules of Civil Procedure] dismissals, 'taking all well-pleaded allegations of the complaint as true and viewing them in the light most favorable to the plaintiff.'" *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013) (quoting *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). The complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When screening a pro se plaintiff's complaint, courts construe the plaintiff's allegations liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The case is about an apparent dispute between Lipinski and her neighbor, which apparently led to an arrest. It started on May 25, 2020, when Lipinski was digging a shallow trench in her front yard in Burnham, Illinois, to install yard pavers. *See* Cplt., at 1 (Dckt. No. [1]). Her neighbor, Defendant Alonso Castaneda, observed her working but didn't speak to her. *Id.*

Around 15 minutes later, Officer Jesus Avila arrived and told Lipinski that her yard pavers must be at least two feet back from the property line. *Id.* at 2. Lipinski asked Officer Avila to provide the city ordinance for this rule. He said that he would get Lipinski a copy of the ordinance, and drove off. *Id.*

Lipinski went inside to research the issue but couldn't find this ordinance. She called the police department three times asking for Office Avila, but couldn't reach him. *Id.* Unnamed employees at the police department and "the Village clerk Chavez" told Lipinski that they were unaware of an ordinance requiring a two-feet border between a property line and yard work. *Id.*

Lipinski resumed her yard work the next day. While she was working, Officer Tim Bolin arrived at Castaneda's home in an unmarked police car. *Id.* Officer Bolin and Castaneda approached Lipinski. Officer Bolin told Castaneda that his dispute with Lipinski – the complaint isn't clear what this dispute is about – is a "civil matter." *Id.* Castaneda argued with the officer, and Officer Bolin told him to be quiet. Castaneda returned to his house. *Id.* at 2–3.

Officer Bolin then returned to his car and sat there "talking on his phone for a while." *Id.* at 3. Lipinski believes that Officer Bolin was speaking to Officer Avila, and that Officer Avila "told him to arrest" her. *Id.* But the complaint offers no facts to support that belief. Lipinski does not allege that she could hear the conversation, let alone that she has a factual basis to allege that Officer Bolin was talking with Officer Avila (as opposed to someone else).

At that point, Officer Joshua McAllister arrived in a police car. *Id.* He met with Officer Bolin, and the two officers then returned to Lipinski's home and placed her under arrest. *Id.* Lipinski asked why she was being placed under arrest, but the officers did not respond. *Id.*

She told the officers that she needed to "lock up [her] house and garage and get [her] medicine," but the police prevented her from doing so. *Id.*

Lipinski complained to Officer McAllister that her handcuffs were too tight and were hurting her wrists, but he "didn't say anything." *Id.* Only after arriving at the police station were the handcuffs loosened, and Lipinski's wrists were "all red." *Id.*

After getting booked at the police station, Lipinski's medication began to wear off (it's unclear from the complaint what the medication is or what condition Lipinski suffered from). *Id.* at 4. Lipinski "got real sick and . . . began throwing up and coughing real bad." *Id.* She told jail staff that she needed her medication, and they called her an ambulance. *Id.* Paramedics arrived and were ready to take Lipinski to the hospital, when an unnamed police lieutenant said that Lipinski could be released on bond. *Id.* Lipinski then walked home but continued coughing and vomiting from the lack of medication. *Id.*

When Lipinski arrived home, she noticed that the coil spring in her garage door was broken, costing her over $500. *Id.* She believes that Castaneda and his brothers caused the damage. *Id.* Sometime after being released from jail, she learned that she had been arrested for criminal trespass. *Id.* at 4–5.

On May 17, 2022, Lipinski filed suit against Castaneda and Officers Avila, Bolin, and McAllister. Drawing all reasonable inferences in Lipinski's favor, the complaint states a plausible claim for relief against Officers Bolin and McAllister, but not against Officer Avila or Castaneda.

The complaint offers a narrative description of what happened, without separating the allegations into individuals claims. So, prescreening is a bit of a challenge. Even so, the Court can spot a few potential claims.

For starters, Lipinski appears to allege that she was falsely arrested. *Id.* at 3. Read in her favor, the complaint alleges that the police arrested her without any legitimate reason. She alleges that the police have a "vendetta" against her family "for no reason." *Id.*

A warrantless arrest without probable cause violates the Constitution and can form the basis for a claim under 42 U.S.C. § 1983. *Montano v. City of Chicago*, 535 F.3d 558, 568 (7th Cir. 2008). But "the existence of probable cause is an absolute defense to a § 1983 false-arrest claim." *Id.* "Probable cause exists where the police officer is aware of facts and circumstances 'sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'" *Coleman v. City of Peoria*, 925 F.3d 336, 350 (7th Cir. 2019) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Here, Lipinski has sufficiently pleaded a false-arrest claim against Officers Bolin and McAllister. She alleges that the officers arrested her while she was completing yardwork on her property. The complaint doesn't mention that the officers had an arrest warrant. And it doesn't plead any facts indicating that the officers had probable cause to arrest Lipinski for criminal trespass. Instead, Officer Bolin appears to have intervened in a dispute between Castaneda and Lipinski, and then arrested Lipinski with Officer McAllister moments later. Lipinski's complaint doesn't allege that she was present on Castaneda's property, so the pleading does not allege an arrest for trespassing.

Read in her favor, the complaint, the complaint alleges that the police officers arrested her without a legitimate reason. At this stage, that's enough for the complaint to survive. Maybe there is another side to the story, but at this point, only her story matters.

Lipinski cannot state a claim for false arrest against Castaneda (the neighbor) or Officer Avila. The analysis for Castaneda is straightforward. He is not a police officer and Lipinski does not allege that he participated in her arrest on behalf of the state. This Court is not aware of any basis for suing a private citizen for coaxing the police to arrest someone. If there is such a claim, the complaint does not articulate it. He cannot be liable for false arrest because he did not arrest anyone.

Moreover, Lipinski's other allegations against Castaneda don't assert a discernable claim. She alleges that Castaneda and his brothers caused $500 worth of damage to her garage door while she was in jail. *See* Cplt., at 4 (Dckt. No. [1]). Lipinski provides no basis for this belief, other than her ongoing (and, on the complaint's telling, cryptic) feud with Castaneda. Her belief, without any supporting factual allegations, isn't enough. The Court isn't required to accept unsupported "labels and conclusions." *Bell Atl. Corp.*, 550 U.S. at 555.

Even then, this Court would need a jurisdictional hook for the $500 property-damage claim, too. Diversity jurisdiction won't cut it. The Court assumes that there is no diversity, and in any event, the amount in controversy is small potatoes, far below the $75,000 threshold. *See* 28 U.S.C. § 1332(a).

Maybe this Court could have supplemental jurisdiction over a state-law claim, but this Court declines to exercise that jurisdiction. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 682 (7th Cir. 2014) (noting that supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right") (quotation marks omitted). District courts may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Claims form part of the same case or controversy when they derive from a common nucleus of operative fact." *McCoy*, 760 F.3d at 674 (quotation marks omitted). Lipinski's allegation of petty property damage by a neighbor is not sufficiently tied to the allegations of false arrest by the officers. She hasn't linked the alleged damage to her garage to her arrest to keep any potential claim in federal court.

The Court therefore dismisses Lipinski's claims against Castaneda without prejudice. Down the road, if Lipinski can articulate the basis for a claim against Castaneda, she may file an amended complaint.

Lipinski's false-arrest claim against Officer Avila fares no better. To state a claim, Lipinski must allege that Officer Avila participated in her arrest. *See Montano*, 535 F.3d at 569. She does not allege that Avila physically participated in the arrest – he wasn't present when Officers Bolin and McAllister arrested her. At best, Lipinski believes that Officer Bolin was speaking on the phone with Officer Avila just before her arrest, and that Officer Avila told Officer Bolin to arrest her. *See* Cplt., at 3 (Dckt. No. [1]).

4

It's true that a police officer doesn't need to be physically present at the scene to be liable for a false arrest. *See Acevedo v. Canterbury*, 457 F.3d 721, 723 (7th Cir. 2006) ("A police officer who files a false report may be liable for false arrest if the filing of the report leads to a seizure in violation of the Fourth Amendment, even if he did not conduct the arrest himself."). Directing someone else to commit an unconstitutional act could give rise to a claim. But here, Lipinski's allegations implicating Officer Avila in her arrest are conclusory.

She believes that Officer Bolin was speaking to Officer Avila on the phone, and she believes that Officer Avila told Officer Bolin to arrest her. But she offers no basis for those beliefs. She does not allege that she overheard Officer's Bolin's conversation. In fact, the complaint indicates that she could not hear the conversation. *See* Cplt., at 3 (Dckt. No. [1]).

The complaint offers no other reason to think that Officer Avila was involved in her arrest, other than his visit to her home the day before. Without more, Lipinski has failed to state a claim. The complaint offers a belief, unadorned by facts. A complaint must tell a story, and the chapters of the story must be glued together by facts. But here, the complaint does not tell a story that holds together. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together.").

Maybe Lipinski could plead additional facts that would state a claim against Officer Avila. But for now, the Court dismisses the claims against him. Again, down the road, if Lipinski can offer facts supporting the allegation that Officer Avila was involved in a false arrest, she can file a motion for leave to amend the complaint.

Lipinski also appears to have stated a claim that Officers Bolin and McAllister used excessive force when handcuffing her. *See* Cplt., at 3 (Dckt. No. [1]). The Fourth Amendment prohibits "unreasonable" searches and seizures. *See* U.S. Const. amend. IV. To state a claim for excessive force, a plaintiff must allege that the use of force was "objectively unreasonable." *See Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). Whether force is reasonable depends on the "facts from the perspective of a reasonable officer at the time." *Archer v. Chisholm*, 870 F.3d 603, 617 (7th Cir. 2017).

Excessive-force claims about handcuffing typically involve allegations about the manner of using the handcuffs, such as locking the handcuffs too tightly, or otherwise inflicting unnecessary pain. *See, e.g.*, *Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014) ("A person has the right to be free from an officer's knowing use of handcuffs in a way that would inflict unnecessary pain or injury, if that person presents little or no risk of flight or threat of injury."); *Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003) (collecting cases describing when the use of handcuffs constitutes excessive force, including when officers "refus[e] to loosen plaintiff's chafing handcuffs," and where tight handcuffs caused nerve damage or a "sprained wrist, shoulder, and elbow"). The officer must have knowledge that the handcuffs inflicted pain. *See Rooni*, 742 F.3d at 742.

Here, Lipinski alleges that the handcuffs were put on too tightly. She alleges that she told Officer McAllister that the handcuffs were hurting her wrists, but he did not respond. *See* Cplt., at 3 (Dckt. No. [1]). Only later, after they arrived at the police station, did Officer McAllister

5

loosen the handcuffs. *Id.* Lipinski's allegation that she told Officer McAllister that the handcuffs were causing her pain shows that he appears to have been aware that the handcuffs were causing her pain.

Finally, it is not clear whether Lipinski is raising a claim for inadequate medical care based on either the officers' decision to not allow her to bring her medicine to the police station or her later illness at the police station. *Id.* at 3–4. But as things stand, the complaint does not appear to state a claim.

Arrestees may bring a claim under § 1983 for inadequate medical care based on the Fourth Amendment. *See Jump v. Village of Shorewood*, 42 F.4th 782, 792–93 (7th Cir. 2022). A plaintiff must show "that the defendants' actions were 'objectively unreasonable' and caused his injuries." *Pulera v. Sarzant*, 966 F.3d 540, 549–50 (7th Cir. 2020) (quoting *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011)).

Lipinski alleges that after she got sick at the police station, she told unnamed staff that she needed her medication, and the staff contacted an ambulance. *See* Cplt., at 4 (Dckt. No. [1]). Unnamed medical staff provided care. *Id.* And an unnamed police lieutenant then permitted Lipinski to go on bond, so she went home to get her medicine instead of going to the hospital. *Id.*

So, the complaint does not allege that they denied her medical care. Instead, it does the opposite. "I told them I need my medicine. They had to call an ambulance *which came* and gave me some water but they didn't have medicine to give me. They were going to take me to the hospital but the police Lieutenant said they will release me on bond and they will give me a ride and I can go home to get my medicine." *Id.* (emphasis added).

The complaint also does not allege that any of the defendants played a role in the medical decision-making at the police station. A § 1983 claim against an officer in his personal capacity seeks to impose individual liability for the officer's actions. *See Gonzalez v. McHenry County*, 40 F.4th 824, 828 (7th Cir. 2022). "Lawsuits against individuals require personal involvement in the constitutional deprivation to support a viable claim." *Id.* (quotation marks omitted). Lipinski's allegations do not implicate any of the named defendants in her medical care. And the complaint doesn't name anyone – police officer, medical professional, or otherwise – who was present during this incident. As currently plead, any potential claim based on inadequate medical treatment could not go forward.

Turning next to Lipinski's application to proceed *in forma pauperis*, the Court finds that Lipinski has established that she cannot pay the filing fee or costs of litigation. The Court grants her application to proceed *in forma pauperis* (Dckt. No. [3]).

However, the Court denies Lipinski's motion for attorney representation (Dckt. No. [4]) without prejudice. There is no right to court-appointed counsel in federal civil cases, but the Court may recruit a lawyer to represent an indigent litigant on a pro bono basis. *See Watts v. Kidman*, 42 F.4th 755, 760 (7th Cir. 2022). In deciding whether to recruit counsel, the Court must determine whether the plaintiff has made a reasonable attempt to retain counsel on her own or has been effectively precluded from doing so. If she has, the Court must consider whether, given the

difficulty of the case, the plaintiff appears competent to litigate by herself. *Id.* (citing *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc)). And because recruited counsel is a limited resource, the Court may also consider the importance and likely merits of the plaintiff's claims. *See id.* at 763.

The analysis does not focus solely on the plaintiff's ability to try the case. "[T]he question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *James v. Eli*, 889 F.3d 320, 327 (7th Cir. 2018) (quoting *Pruitt*, 503 F.3d at 654). "The relevant concern is 'whether the plaintiff appears competent to *litigate* his own claims, given their degree of difficulty.' This includes *all* of the tasks 'that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.'" *Id.* (quoting *Pruitt*, 503 F.3d at 654) (citation omitted).

After considering the above factors, the Court concludes that appointment of counsel is not currently warranted. Although Lipinski has demonstrated that she made attempts to obtain counsel on her own, this case is in its early stages. And her claims for false arrest and excessive force all arise from a single incident about which she has personal knowledge.

Moreover, Plaintiff has experience litigating cases pro se. *See, e.g.*, *Lipinski v. Chavez*, No. 19-cv-6154 (N.D. Ill. 2019) (deferring a decision on Lipinski's motion for attorney representation in the early stages of litigation); *Lipinski v. Castaneda*, No. 16-cv-7153 (N.D. Ill. 2016) (denying Lipinski's motion for attorney representation). In fact, she has responded to a dispositive motion – a motion to dismiss – in one of her cases filed in this district. *See Lipinski v. Castaneda*, No. 16-cv-7153 (N.D. Ill. 2016). And she is currently litigating a case pro se in this district after her court-appointed counsel withdrew. *See Lipinski v. Chavez*, No. 19-cv-6154 (N.D. Ill. 2019).

Lipinski has some college education, has litigated cases pro se, and has experience with the legal system, including litigating civil-rights cases she has filed in federal court. As a result, the Court finds that Lipinski appears competent to litigate the case herself, especially at this early stage of the litigation. *See Pickett v. Chicago Transit Auth.*, 930 F.3d 869, 871 (7th Cir. 2019) (affirming denial of motion for counsel where it was filed "so early in the case that it was impossible to tell whether [plaintiff] could represent himself adequately"). Lipinski may renew her motion should it appear that her need for assistance of counsel is more pressing. *See Mapes v. Indiana*, 932 F.3d 968, 971–72 (7th Cir. 2019) (observing that appointment of counsel may be necessary to help a pro se litigant amend his complaint and "investigate and flesh out any claim that may exist").

Date: October 19, 2022

Steven C. Seeger
United States District Judge